HARRIS *v.* STATE.

In Banc. May 8, 1950.

No. 37456 (46 So. (2d) 75)

B. D. Wade, and Jackson, Young, Daniel & Mitchell for appellant.

**R. O. Arrington,** Assistant Attorney General, for appellee.

**Smith, J.**

Following his indictment on a charge of having murdered his wife, appellant was convicted and sentenced to be electrocuted.

One position taken by appellant in his brief is that he is guilty of no greater crime than manslaughter. In the trial he seems to have contended that the killing was accidental while he was defending himself against an attack by an uncle of his deceased wife. It is argued also that the verdict of the jury was against the overwhelming weight of the evidence, and a new trial should be granted.

After a party "across the river" beginning at 2 o'clock Sunday morning, appellant, his wife, and their friends, returned to Jackson about half past six. They had coffee at his wife's mother's home, and the appellant also had coffee at her uncle's home. It had been planned that the party would have breakfast at appellant's home, to be prepared by Henarine, his wife. However, appellant finally returned home, and inquired of the people with whom he and his family shared the residence, as to the whereabouts of his wife since she was not there. They did not know, and, becoming angry, he went out to find her, returned without success, and again departed on his quest, threatening that he was going to kill her. After a while he espied her with her uncle in his car, on the front seat with him, and another colored man on the back seat. At that time appellant had an open knife in his hand, which he apparently was so carrying throughout his search for his wife.

The car was stopped, and he angrily accosted his wife, commanding her to get out and stating that he was going to kill her. He opened the car door and cut her on the

arm. He entered the car, from which the two men had left, but finding the key had been removed by the uncle from the switch, he attempted to let it roll off. After a short distance, the uncle from the outside reached the steering wheel so as to turn the car into the curb and stop it. Thereupon appellant dragged his wife from the car, seized her around the head with one arm and proceeded to inflict two deep stab wounds in her back, one of which severed an artery, and from these wounds she died on the following Tuesday morning.

Defendant's version was that he did cut her on the arm, and that he cut her twice in the back, but without intention of killing her; that she shoved him twice while her uncle was advancing on him with an uplifted tire iron, and that the fatal wounds were accidentally inflicted on her while he was seeking to avert the attack upon himself by her uncle as stated. A state's witness also testified that the uncle was advancing with the drawn tire tool upraised, but the lethal blows had been completed, and he never reached appellant, who left running or walking off, according to varying versions.

The theory of the State was supported by the uncle and, in the ultimate effect of his testimony, by the other man, the passenger in the car; as well as by a resident, who sat reading on his porch nearby, and other witnesses. The appellant was the sole witness for himself.

In addition to the oral testimony the State introduced an alleged confession made to the police on the morning of the crime and while appellant's wife was still alive in the hospital, and under competent professional and surgical treatment. She did not die until the following Tuesday. This confession was in the form of written questions and answers, signed by appellant and two officers as witnesses. In it appellant said he did not intend to kill her; he said when he found her gone he went out to look for her, and after he stopped the car and he asked her where she had been, she stood up, and said "Nowhere, what are you talking about." He then lost his temper

and put his hand around her and cut her two times; that at the time she was doing nothing to him; and that the reason he cut her was that she had left the house without telling him she was going; he had no objections to her being in the car. He signed this document freely and voluntarily, without promise or threat, and on the witness stand, on cross-examination, admitted he told the truth therein, and that the officers were nice to him.

However, the confession started with this statement: "You will be charged with Assault and Battery with intent to kill Henarine Harris in that you on the morning of June 5, 1949 cut her twice in the back. Did you cut Henarine? Yes, sir, I cut her." It is to be remembered that at that time she was still alive in a hospital under a doctor's care, and the officers had no reason to apprehend her death. It was a short time after the tragic event and the same Sunday morning. Henarine, as a matter of fact, lived until the next Tuesday. Objection to this confession is urged here for three reasons. Primarily, it was an offer by the officers to the appellant that if he would confess, he would be charged with a lessor crime than that for which he was later indicted after her death, and therefore a promise of leniency; next, that it was obtained "under circumstances amounting to a misrepresentation of the charges against the defendant in violation of the defendant's constitutional right to be informed of the nature of the charges against him", as provided constitutionally; and, finally, that it was a confession to another crime than the one for which he was indicted and was being tried.

The officer testified, in the absence of the jury, that before the alleged confession was made and signed, appellant was informed that anything he told the officers would be used against him in court, that he did not have to make any statement whatever, and that they were not going to abuse him. They did not promise him anything at all, and he told them what happened. The document is really a recital of what happened, and not an explicit

confession to any particular crime. Appellant expressly disavowed therein that he intended to kill his wife. Indeed, the wife was then alive, as stated, and he knew she was. Furthermore, on the witness stand he admitted the statements in the document were true.

 We do not agree it was an offer of leniency to him in order to induce a confession. There is no evidence in the case to sustain this view, which enters the case in the reasoning of the brief on behalf of appellant.

 Neither do we agree with the argument that it was induced by misrepresentation, since there is no testimony to the effect that the officers misrepresented the wife's condition or that it was unknown to appellant at the time he signed the statement. Moreover, the way defendants are constitutionally informed of criminal offenses against them is by means of the affidavit, information, or indictment, and not information from officers under the circumstances here. As stated, supra, it was not a confession of any crime, but rather a statement of events, which would rest upon the charge of assault and battery with intent to kill and murder the wife, if she recovered; but would progress to indictment for murder if she succumbed to the wounds. Therefore, the third and last objection, on that score, is also invalid in our opinion.

There was another point assigned, but we think it of insufficient value to merit discussion.

The task of the jury was to reach a verdict on conflicting testimony, which they did, finding the defendant guilty as charged. We cannot say that the verdict was against the overwhelming weight of the testimony. On the contrary, the record reflects a deliberate premeditated murder, and fully justifies the verdict of the jury. The judgment of the trial court must be and is affirmed. The date of execution is set for Friday, the 23rd day of June, 1950.