751 So.2d 1171 (1999)
Raymond BUICE a/k/a Robert Buice, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-CA-01156-COA.
Court of Appeals of Mississippi.
November 9, 1999.
Rehearing Denied February 8, 2000.
*1172 Falton O. Mason, Jr., Attorney for Appellant.
Office of the Attorney General By Jean Smith Vaughan, Attorney for Appellee.
BEFORE McMILLIN, C.J., DIAZ, AND LEE, JJ.
LEE, J., for the Court:
¶ 1. On June 22, 1998, Honorable Andrew Cleveland Baker denied Raymond Buice's second petition for post conviction relief. It is from this denial that Buice perfects his appeal to this Court and argues the following issues on appeal (1) whether the trial judge erred in denying his petition for post conviction relief, (2) whether the trial judge erred in revoking his suspended sentence, and (3) whether his suspended sentence was unlawfully revoked and he is being unlawfully held in custody. Finding these arguments without merit, we affirm.

FACTS
¶ 2. Buice was convicted on felony bad check charges, by guilty plea, entered on October 5, 1990, in Cause No. CR-90-30-B (P1). On October 19, 1990, Buice was convicted on a felony bad check charge, by guilty plea, entered on October 19, 1990, in Cause No. CR-90-44-B (P2). Additionally, on October 19, 1990, the court imposed sentencing for Cause No. CR-90-30-B (P1) and Cause No. CR-90-44-B (P2).
¶ 3. On October 19, 1990, in Cause No. CR-90-30-B(P1), the court imposed a separate sentence of three years on counts one, two, and three to run consecutively and ordered restitution. In Cause No. CR-90-44-B(P2), the court imposed a sentence of three years to be served concurrently with the sentence imposed on CR-90-30-B(P1). The trial court then instructed Buice that the imposition of his sentence was suspended contingent on his good behavior, and on the condition that Buice made restitution at the rate of $100 per month beginning November 1, 1990.
¶ 4. Subsequently, the State determined that Buice failed to meet the condition of good behavior and filed a petition to revoke suspended sentence and an amended petition to revoke sentence. On May 30, 1996, a revocation hearing was held, and the trial judge held that Buice had violated the good behavior condition of his suspension. The trial judge revoked the suspension of the sentence which had been issued on October 19, 1990.
¶ 5. On August 11, 1997, Buice filed a petition for post conviction relief asserting that since his suspended sentence was revoked after five years it was unlawful and he was unlawfully being held in custody. On September 2, 1997, the trial judge denied the petition. On April 24, 1998, Buice filed a second petition for post conviction relief which contained the same arguments as asserted in his aforementioned petition of August 11, 1997. On June 22, 1998, the trial judge dismissed the petition for post conviction relief as res judicata.
ISSUES
I. WHETHER THE TRIAL JUDGE ERRED IN DENYING BUICE'S PETITION *1173 FOR POST CONVICTION RELIEF.
II. WHETHER THE TRIAL JUDGE ERRED IN REVOKING THE SUSPENDED SENTENCE OF BUICE.
III. WHETHER BUICE'S SUSPENDED SENTENCE WAS UNLAWFULLY REVOKED AND HE IS UNLAWFULLY BEING HELD IN CUSTODY.
¶ 6. This Court has reviewed the above referenced arguments asserted by Buice, the record, as well as applicable statutory and case law and concludes that Buice is procedurally barred on his successive petition for post conviction relief. Buice has raised the same arguments on appeal as those raised in his two prior petitions for post conviction relief. Those contentions being that the trial court erred when the judge revoked his suspended sentence and he is currently being unlawfully held in the custody of the department of corrections. Buice argues that under Mississippi Code Annotated sections 47-7-37 (Supp.1998) and 99-39-27(9) (Supp. 1998) he is entitled to the relief sought which is his release from custody.
¶ 7. Buice has extracted the following statements of law from section 47-7-37: "The period of probation shall be fixed by the court, and may at any time be extended or terminated by the court, or judge in vacation. Such period with any extension thereof shall not exceed five (5) years...." Additionally, Buice selected the following language from section 99-39-27(9):
The dismissal or denial of an application under this section is a final judgment and shall be a bar to a second or successive application under this chapter. Excepted from this prohibition.... Like-wise exempted are those cases in which the prisoner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.
¶ 8. In both petitions, Buice argued that his suspended sentence/probation was unlawfully revoked and he was being unlawfully held in custody. There were no additional contentions made by Buice in his second petition for post conviction relief. Buice's first motion was not dated and signed and was dismissed by the trial judge as being without merit. As aforementioned, Buice's second motion was denied by the trial judge as res judicata. "Any such points raised in the application which have been previously litigated and decided at trial or on appeal are res judicata and barred." Edwards v. Thigpen, 433 So.2d 906, 907 (Miss.1983) (citations omitted). Since Buice brought forth the same arguments in both petitions and the judge had ruled on the merits as to the first petition, he is now procedurally barred pursuant to the doctrine of res judicata. Our law presumes that the judgment of the trial court is correct, and the appellant has the burden of demonstrating some reversible error to this Court. Pierre v. State, 607 So.2d 43, 48 (Miss.1992). However, when one appeals a matter and is attempting to prove to this Court that the trial court has committed reversible error it must be done within the confines of statutory, case, and procedural law. Buice failed to follow the mandated procedures and in doing so he is now barred from arguing reversible error by the trial court. In Smith v. State, 434 So.2d 212, 220 (Miss.1983), the Mississippi Supreme Court stated as follows:
The fair and orderly administration of justice dictates that a person accused of a crime be afforded the opportunity to present his claims before a fair and impartial tribunal. It does not require that he be given multiple opportunities to "take a bite at the apple." Likewise, the orderly administration of justice does not require this Court to "lead a defendant by the hand" through the criminal justice system. It is this Court's responsibility to provide a meaningful opportunity for defendant to raise his claims and have them adjudicated.
Buice was given this opportunity.
¶ 9. The exceptions under Mississippi Code Annotated section 99-39-27(9) only *1174 allow the filing of a successive writ if the argument presented within the writ falls under one of the exceptions and has not been previously argued and a decision rendered on the merits by the trial court. In Sneed v. State, 722 So.2d 1255, 1256 (Miss. 1998), Sneed had filed two petitions for post-conviction relief. The first petition was denied. Id. Sneed filed a motion to reconsider his post-conviction motion and again it was denied. Id. It was not until after the second denial that Sneed proceeded with the appeal process. Id. The supreme court held that since Sneed failed to file a timely appeal after the first petition was denied, his appeal on the successive writ was out-of-time, and he was barred from bringing a successive motion. Id. To support the holding of the court it cited Miss.Code Ann. section 99-39-27(9) (Supp.1998) which provides, "The dismissal or denial of an application under this section is a final judgment and shall be a bar to a second or successive application under this chapter."
¶ 10. Similar to Sneed, Buice did not pursue an appeal after the court denied his first petition. Since Buice presented the same arguments in his second petition, he was in effect requesting the trial court to reconsider its prior judgment. When the court failed to reverse its prior decision, Buice filed his appeal. Just as in Sneed, Buice's appeal is out-of-time. This Court, therefore, finds that the trial judge was not in error in dismissing Buice's successive petition as res judicata.
¶ 11. The second petition filed by Buice is also time barred under Miss.Code Ann. section 99-39-5(2) (Supp.1998) which states in part:
A motion for relief under this chapter shall be made within three (3) years after the time in which the prisoner's direct appeal is ruled upon by the Supreme Court of Mississippi or ... in case of a guilty plea, within three (3) years after entry of the judgment of conviction. Likewise excepted are those cases in which the prisoner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.
Buice's first petition for post-conviction relief would have come within the exception; however, since he failed to proceed with appellate action after its denial the second petition is now time-barred.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY DENYING POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, DIAZ, PAYNE, AND THOMAS, JJ., CONCUR.
SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., AND BRIDGES, J. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.
MOORE, J., NOT PARTICIPATING.
SOUTHWICK, P.J., concurring.
¶ 13. The majority concludes that Buice is procedurally barred from complaining about the revocation of his probation. Though I agree with the ultimate decision, I find the explanation of the procedural waiver too absolute. Therefore I write separately.
¶ 14. First I emphasize the facts that are central to my view. Buice received three consecutive three-year sentences, but the sentences were suspended contingent on Buice's good behavior and other conditions. I agree that absent a specific statement in the suspension order, a five-year probation period will normally be implied. Wilson v. State, 735 So.2d 290, 292 (Miss. 1999). Wilson was decided well after Buice's revocation, but I agree that it controls. In Wilson, eight years of a ten year sentence were suspended. Id. at 291. Whether a five-year probation period would be implied even, for example, had the suspension here been of multiple three *1175 year sentences that were imposed concurrently instead of consecutively need not be decided. Since the total sentence for Buice was nine years I agree the implied probation was for five years.
¶ 15. The implied five-year probation period expired October 19, 1995. The State filed a petition to revoke six months later on April 9, 1996. There are suggestions in the record that the delay may have been partially the result of the State's agreement to let Buice attempt to make restitution on bad checks that had been written and to have him work with the "Panola-Tate Task Force." The reasons for the delay in fact were never explained though it does appear that Buice may have been aware for some time of the risk to his probation.
¶ 16. Probation was revoked on May 30, 1996 based on this evidence testimony regarding a pending 14 count indictment for presenting bad checks, all of which were said to be written prior to the end of probation, and separate convictions for driving with a suspended license and obstructing a public road, for first offense driving under the influence, for malicious mischief, and for making threatening phone calls. The dates of the offenses other than for bad checks are not in the record.
¶ 17. The dissent argues that only the bad checks charge shows events that arose during the period of probation and that the bad checks offenses were waived by the "deal." First, there was testimony at the revocation hearing that Buice never made any payments on the bad checks, but that he did assist the law enforcement task force on two cases. Whatever "deal" was made with the prosecutor, the proof that apparently was accepted by the circuit judge at the time of revocation was that Buice had not complied by making the payments on the checks. I find that the bad check indictment, the validity of those charges being admitted in Buice's testimony, was sufficient to permit revocation. Secondly, the fact that the dates of conviction for the other crimes may have been after probation ended does not matter. Buice's obligation was to commit no offenses during probation regardless of when or whether there subsequently were convictions. The transcript of the revocation hearing indicates that the following documents were introduced that were not made a part of the record here:
a) Exhibit 1 was a record of the conviction on May 14, 1996 of speeding;
b) Exhibit 2 was a record of the conviction on an unstated date of making a threatening phone call;
c) Exhibit 3 was a record of the conviction on an unstated date for malicious mischief.
d) Exhibit 4 was the indictment for presenting bad checks; and
e) Exhibit 5 was a record of the conviction on an unstated date for obstructing a road.
¶ 18. Buice's attorney made attachments to the second motion for post-conviction relief and included the transcript but did not include these exhibits. Had this been the appeal from the denial of Buice's first motion for post-conviction relief, the failure of the record to set out those details would be more inexplicable and also more problematic. On the partial record of those proceedings that are before us, designated by Buice's attorney in a motion that I ultimately find the trial judge properly did not consider because of a statutory prohibition, I find the lack of the clarity in the charges not to be controlling. We know the dates of the bad checks. They suffice.
¶ 19. Buice's first post-conviction relief motion which challenged the revocation for exactly the reason that he raises now was denied on September 2, 1997, and no appeal was taken. Another motion was filed almost eight months later and denied on June 22, 1998. It is from that second denial that the present appeal was taken.
¶ 20. The majority decides this case solely on the effect of unsuccessfully challenging *1176 the propriety of the revocation, failing to appeal, then filing another motion on the same question. I agree with the Court's result but also believe that we have to analyze whether this revocation implicates the kind of right that the Mississippi Supreme Court has held to be exempt from the post-conviction relief statute's procedural bars.
¶ 21. First I will describe my area of agreement with the majority. The post-conviction relief statutes permit a prisoner one motion to challenge the validity of his incarceration. An order denying him relief "is a final judgment and shall be conclusive until reversed." Miss.Code Ann. § 99-39-23(6) (Supp.1999). The "until reversed" is referring to an appeal from that order. That did not occur. Therefore, unless a specific exception applies, Buice's second motion raising this issue is statutorily barred. Id. (the order "shall be a bar to a second or successive motion under this chapter").
¶ 22. I find no specific statutory exception under the post-conviction relief statute to apply. One exception at least refers to something similar, in the following words:
Likewise excepted [from the bar arising from a second filing] are those cases in which the prisoner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.
Miss.Code Ann. § 99-39-23(6). The meaning of this sentence should be interpreted in light of the statute's purpose, namely, to establish the procedure for all post-conviction relief available to prisoners. Whether it is someone imprisoned under the original sentence after conviction or instead is someone whose received probation but then had that freedom revoked, this statute is applicable. The whole thrust of the statute is to limit successive motions by prisoners, such that each is given one but only one opportunity to present defects in the procedures that has led to incarceration. The opposite would occur if this section is interpreted to mean that people imprisoned as a result of the revocation of probation can continue to file motions without numerical limit so long as they keep challenging what occurred when probation was revoked.
¶ 23. Instead, the reasonable interpretation is that if a prisoner challenged an initial incarceration and lost, later was released on probation, then had the probation revoked, the prisoner can subsequently challenge the revocation. That reading is supported also by the fact that another situation appearing in the same list of exceptions is that the "sentence has expired." Certainly if a prisoner challenged the rulings that led to his imprisonment and lost, then subsequently his sentence expired but he is forced to remain imprisoned anyway, the earlier unsuccessful post-conviction motion should not bar a new one based on the expiration of the sentence. Reading the whole act together, I find the one-motion limit to permit only one challenge to probation revocation.
¶ 24. Therefore, when Buice's first motion for relief was denied, it was a final judgment for which appellate review had to be sought or else it became final. No post-conviction statutory exception for successive motions applies.
¶ 25. That is essentially the point made by the majority. I find that there is more to the question, however. The supreme court has set procedural bars aside when the argument has been made that fundamental constitutional rights have been violated. Among such rights was the absence of necessary due process notice that a defendant was subject to a life sentence instead of a seven-year one. Smith v. State, 477 So.2d 191, 196 (Miss.1985). Citing Smith, a later post-conviction relief appeal stated that denials of "fundamental constitutional rights may be excepted from procedural bars which would otherwise prohibit their consideration," which included a judge's sentencing the accused to life when the relevant statute permitted only the jury to assess that. Luckett v. State, *1177 582 So.2d 428, 430 (Miss.1991). A post-conviction relief case cited by the majority makes the same point, that being free from an illegal sentence is a fundamental right. Sneed v. State, 722 So.2d 1255, 1257 (Miss.1998). The sentencing issue raised by Sneed was found not to be meritorious, but it was not held to be barred by the successive motion provision. Id. (see both pages 1256 & 1257).
¶ 26. I find no precedent in the post-conviction arena that contains an argument such as Buice's. Buice may still be raising a fundamental right exempt from the procedural bar, but it is a new category than those previously identified. If there is a fundamental right implicated here, it would likely be a due process right not to be convicted by a court that does not have jurisdiction or not to be detained by a conviction that is void. One federal court that recently analyzed the issue found a divergence of opinion on the issue and stated that it was "not persuaded that a constitutional violation necessarily occurs when the convicting state court acts without jurisdiction purely as a matter of state law." Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir.1991).
¶ 27. This court can enter a decision based on its best judgment as to whether the state supreme court would recognize Buice's argument as raising a fundamental right. If possible, I would prefer avoiding the somewhat speculative nature of that exercise and initially determining instead whether the challenge that Buice makes demonstrates a jurisdiction problem with the revocation. I do this despite the dissent's statement that this clearly falls under the case law finding that serving an illegal sentence impacts a fundamental right. My only answer is, "it depends." Unless the supreme court has held that all sentencing issues raise fundamental rights and eradicate all procedural requirements of the post-conviction relief statute, a proposition that I find too sweeping to be accurate, then there is something more limited involved. I will discuss that.
¶ 28. The authority of a circuit court to revoke probation in similar but not identical situations has previously been addressed. Largely unaddressed is any claim that revocation could be based on violations that occur after the period of probation expires. Prosecutors apparently have not made this argument as the obligations of probation would have terminated. The supreme court has held that if a revocation petition is filed prior to the end of the probation period but is resolved with a reasonable time after the end of the period, that revocation is not defective because of the delay. Jackson v. State, 483 So.2d 1353, 1356 (Miss.1986). What we must decide is whether it may be proper in some circumstances to revoke probation if proper grounds arose during the probation period, but the petition was not filed until after probation ended. In addition, the supreme court has recently made clear that an offense that predates the probation but which does not lead to a conviction until after probation begins, cannot be considered. Smith v. State, 742 So.2d 1146 (Miss.1999). Even more recently, the court concluded that the State's failure to have the probationer arrested or take any other steps until several months after the end of the probation period caused the revocation to be improper. Ellis v. State, 748 So.2d 130 (¶ 14) (Miss.1999). The court specifically refused to hold that the petition to revoke must be brought within the period of revocation. Id. What was said is that due process requires that the probationer receive notice through the serving of an arrest warrant or the filing of a petition to revoke that sets out "the nature of the violation and the date, time and place of hearing." Id.
¶ 29. The reference to the due process requirements for probation revocation was supported by a citation to Riely v. State, 562 So.2d 1206 (Miss.1990). Ellis at (¶ 14). Riely in turn relied upon Morrissey v. Brewer, 408 U.S. 471, 485-87, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which set out requirements for notice, a hearing, and *1178 relative promptness for the entire proceedings. Riely, 562 So.2d at 1210. Morrissey does not require that notice be received within the period of probation since the obligation of the probationer was to commit no offense during the five-year period, without any concomitant right to receive notice before the end of the period of a possible violation. The obligation to avoid violations exists until the precise moment that the probation period expires. It would in effect shorten the probation period to require that notice of a violation be received prior to the end of the period during which the probationer is to commit no violations. My reading of Ellis is simply that under the dictates of Jackson, the whole process was not conducted within a reasonable period of time. Id., citing Jackson, 483 So.2d at 1356. I will below also discuss a reference to "jurisdiction" in Ellis.
¶ 30. Though this probation issue has not squarely been faced in Mississippi, the supreme court decided an almost identical question regarding the revocation of parole, referring to "the similar context of probation revocation" in order to rely on Jackson. Hester v. State, 741 So.2d 229 (¶ 5) (Miss.1999). In that case a person violated parole in 1992, but the only proceedings prior to the expiration of parole was by the parole board itself. After an internal review, grounds were found to begin formal proceedings. The majority relies on evidence, the adequacy of which was disputed by the Hester dissent, that a warrant was issued in 1992 for his arrest. Id. (¶¶ 10 & 18). The court found that revocation under these facts was proper because of Jackson, which of course addressed probation revocations.
¶ 31. What I find to cut through any cloud of uncertainty regarding the absolute need for something to be done in all cases prior to the end of the parole or probation period, is the following conclusion that first appears in Jackson and is then quoted by the Hester majority:
If this were not the law, then a probationer who violates his probation on the last day of the five (5) year period would have to be caught and given a hearing that day or his probation could not be revoked. Such reasoning would be absurd and is not the law.
Hester (¶ 5), quoting Jackson, 483 So.2d at 1356. It is true that the court spoke of the petition in Jackson "tolling" the five-year period, but the "absurdity" includes situations in which there would not be time to file a petition. I find the rule to be broader than the Jackson or Hester facts.
¶ 32. The only conclusion that I can reach from this is that the supreme court is holding that no affirmative act by the State to commence revocation is necessary in certain limited circumstances prior to the end of the probation period. If the State learns late in the process of violations that occurred near the end of the probation period, there is no requirement to move to revoke before probation has concluded. It is important that nothing in the probation statute even requires a petition to revoke to be filed. The only procedural statement regarding the commencement of the proceedings is that the judge during the period of probation "may issue a warrant" for the probationer's arrest. Miss.Code Ann. § 47-7-37 (Supp.1999). That is stated as an option. I would read it in light of Jackson, that whatever is done must be performed within a reasonable period of time. A failure to act within a reasonable time would no more render the decision "void" than would a failure to try someone consistent with the requirements for a speedy trial. Each kind of judgment may be erroneous and subject to reversal, but that is determined only after a careful review of the facts.
¶ 33. That this is a reasonable reading of the requirement of probation revocation statutes is shown by the frequency that other States have reached the same conclusion. E.g., Commonwealth v. Mitchell, 46 Mass.App.Ct. 921, 708 N.E.2d 961, 962 (1999). One compilation of authorities *1179 found three different views as to a trial court's power to revoke probation after the probation period has expired. Lee R. Russ, Power of Court, After Expiration of Probation Term, to Revoke or Modify Probation for Violations Committed During the Probation Term, 13 A.L.R.4th 1240, 1244 (1982). Some of those differences may well arise because of different wording in statutes. Some states require that the entire revocation proceedings be concluded and the new sentence entered before the end of the probation term. Id. at 1272. That is unduly restrictive under the language of our statute, as it would require discovery of the violation, then initiation and completion of the proceedings all before the end of probation. That effectively shortens the period of probation by the length of time those events require, which the Mississippi Supreme Court has held to be "absurd." Jackson, 483 So.2d at 1356. Another view is that revocation may occur after the end of probation so long as some part of the proceedings commenced prior to that time. Russ, Revocation of Probation, 13 A.L.R.4th at 1253. Though the shortening of the effective period of probation is not as significant as under the option requiring all proceedings to be over, there is still the possibility that violations near the end of the period of probation could not be the subject of revocation. That too, in the supreme court's view, is "absurd." Jackson, 483 So.2d at 1356. Thus what I find consistent with Jackson as well as the more recent Hester is that the right exists to revoke for a reasonable period of time after the end of probation if the basis is something that occurred during the probation period. Russ, Revocation of Probation, 13 A.L.R.4th at 1246. The considerations for what is a reasonable time vary, but it is largely a case-by-case determination. Id. at 1248-53. See also, 4 WHARTON'S CRIMINAL PROCEDURE § 553, pp. 583-84 (13th ed.1992).
¶ 34. This case law reveals that proceedings to revoke probation may commence after the end of the probation period. The only doubt raised by Buice is whether the authority was erroneously exercised because an unreasonable time had passed between the end of probation and the commencement of the revocation proceedings. Such considerations are case-by-case and would require careful analysis of the facts explaining the delay. Whatever a court's decision on that issue, even if arguably the decision was erroneous, would not render that decision void as somehow beyond the power of the court to make. If we were deciding the question as raised in Buice's first motion for post-conviction relief, the facts supporting revocation could be fully evaluated. That is not the posture of this appeal.
¶ 35. My conclusions do not proceed so far as to suggest that Buice also is barred if probation had been revoked because of crimes that were committed after probation expired, or if the supreme court had held that no revocation could be commenced after the end of probation. An analogy might be drawn to some dated decisions holding that even though relief would not be granted under the more restrictive habeas corpus petition procedures if the court was shown to have subject matter and personal jurisdiction, that rule was overcome if the judgment of conviction was void on its face. Lewis v. State, 153 Miss. 759, 767, 121 So. 493, 494 (1929). "On its face" meant what the entire record undeniably showed, including that, for example, there were only eleven jurors and not twelve. Ex parte Scott, 70 Miss. 247, 11 So. 657 (1892). Whatever the right of an inmate to contest a probation revocation irregularity such as I posited above, those are not our facts.
¶ 36. Finally, I acknowledge a reference to a jurisdiction problem that appears in a recent supreme court probation revocation decision. I have already discussed why I believe the circuit court's order revoking probation was not void. However, it is true that the Ellis decision states that when the revocation occurred months after probation ended, the circuit court no longer *1180 had "jurisdiction." Ellis, 98-CA-00733-SCT (¶ 13). To read Ellis in the manner presented by the dissent is to nullify the language from Jackson and Hester regarding absurdity. I acknowledge that the reference to an offense occurring on the last day of probation and implicitly the petition to revoke being filed later is dicta, but it also indicates a reasonable reading of the statute consistent with the manner that many other States read theirs. There must be "jurisdiction" after the end of probation for that to happen.
¶ 37. "Jurisdiction" is one of those legal words with somewhat flexible meaning. It is as often used for emphasis as for precision, similar to the manner in which the word "literally" is used ("he literally chewed my head off") when in fact what is meant is the word "figuratively." Not having jurisdiction can properly be used both to refer to the loss of authority by a court to act on a specific case and to the absence of any authority to act on a specific kind of case or against a specific person. For purposes of the issues before us, I find the following meaning of "jurisdiction" to control:
In Duvall v. Duvall, 224 Miss. 546, 80 So.2d 752, the Court had occasion to explain the matter of jurisdiction. It pointed out that "Jurisdiction of the subject matter is the power of the court to hear and determine cases of the general class to which the particular case belongs. 21 C.J.S., Courts, § 23.... [I]f a court has jurisdiction of the subject matter, it has the power to decide the case according to its own view of the law and the facts;...." It was further pointed out that "When the court has jurisdiction of the parties and the subject matter, a judgment rendered on a complaint that does not state a good cause of action is not void and subject to collateral attack...."
Case's Will v. Case, 246 Miss. 750, 758-59, 150 So.2d 148, 151 (1963).
¶ 38. This was reiterated in a more recent case that concluded that a judgment is void only if there is no jurisdiction of the subject matter or of the parties, or if the proceedings failed to provide due process of law. Bryant v. Walters, 493 So.2d 933, 937 (Miss.1986). Though the next precedent is a civil case, I find instructive that the supreme court has held that failure to appeal from an allegedly incorrect ruling on a statute of limitations, a matter similar to the alleged defect here, prohibits later raising that issue. Guardianship of Sugg v. Register, 704 So.2d 56, 59 (Miss.1997). Though the court did not use this terminology, I find that to be correct because the contested ruling was by a court with subject matter and personal jurisdiction, and even if such an error occurred it would not render the decision void. See also Kimbrough v. Wright, 211 Miss. 63, 75, 50 So.2d 909, 915 (1951) (questions regarding statute of limitations had squarely been presented in an earlier suit and resolved, decided adversely, and could not be the subject of new litigation).
¶ 39. I conclude that the circuit court had jurisdiction sufficient to withstand collateral attack to consider the petition to revoke so long as the circuit court is the proper one to consider such petitions in general, and so long as it had personal jurisdiction over Buice. Circuit courts by statute are the ones to consider revocation, and Buice was within the personal jurisdiction of the court. The process that was due Buice was provided, even if the decision can be argued to be erroneous. If it was erroneous, the error was that the State, which had the right in some circumstances to delay in seeking revocation, delayed too long. Whether the circuit court considered the proper legal theory and made the correct interpretation are matters that simply had to be raised on an appeal from that denial, and not held until a subsequent motion.
¶ 40. In summary, I find that the supreme court has stated that probation can in some circumstances be revoked for offenses committed inside the probation period even though the formal revocation *1181 proceedings are not commenced until outside the period. The only question when that occurs is whether the State pursued the matter with reasonable diligence. If diligent action was not undertaken, revocation is not void nor was there lack of jurisdiction. There simply was error of normal dimensions. What in effect Buice is trying to do is argue the point better and procedurally further with a second motion. Having failed to appeal from the initial denial of post-conviction relief, Buice is barred from obtaining relief in this new one.
McMILLIN, C.J., AND BRIDGES, J., JOIN THIS SEPARATE OPINION.
IRVING, J., dissenting:
¶ 41. With great deference to the collective wisdom of my colleagues as expressed in the majority's opinion and the extremely well written concurring opinion by Judge Southwick, I must dissent from the result reached in this case. While the facts are set forth in the two referenced opinions, I must discuss them to some extent here in support of my view that the majority reaches an incorrect result.
¶ 42. I agree with the majority that the term of Buice's probation was an implied five year period, thus mandating an October 19, 1995, expiration date. On April 11, 1996, and on May 28, 1996, the State filed a petition to revoke suspended sentence and an amended petition to revoke suspended sentence, respectively. The amended petition was made a part of the record before us by way of Buice's record excerpts. While the original petition was not made a part of the record, this Court obtained a copy from the Circuit Clerk of Panola County. However, because it is not a part of the record, I will not refer to anything contained in it that is not contained in the record properly before us. The revocation hearing was held on May 30, 1996.
¶ 43. Nothing in the record indicates when Buice was served with a copy of the original or amended petition to revoke his suspended sentence. However, we know that neither could have been served on him prior to April 11, 1996, or May 28, 1996, because these two dates are the dates on which those petitions were filed. Nothing in the record indicates that Buice was arrested on a warrant for violation of his probation or otherwise notified of some probation violation before the termination of his probation on October 19, 1995. In fact, the record indicates that at the time of the revocation hearing, Buice had been in jail only three weeks, indicating an arrest date coinciding approximately with the filing of the original petition. Also, there is nothing in the record indicating that the district attorney or anyone else connected with law enforcement or the judicial system had even considered or taken any preliminary steps to revoke Buice's suspended sentence prior to the expiration of his probation on October 19, 1995. Hence, the record is clear that no due process of any sort was commenced by the State prior to the termination of Buice's probation.
¶ 44. The record reveals that at the probation revocation hearing the State relied upon the following facts to support the revocation of Buice's probation: (1) a fourteen count indictment returned against Buice by the Tate County Grand Jury in March 1996, for checks written by Buice between December 18, 1994 and January 1, 1995, (2) convictions on May 14, 1996, in the Justice Court of Panola County for speeding and driving while license was suspended, (3) convictions on April 25, 1996, in the Justice Court of Grenada County for malicious mischief and making threatening telephone calls, and (4) convictions in Monroe County for driving while license was suspended and obstructing a public road (no dates given as to either the date of the commission of the acts or the date of the convictions).
¶ 45. Thus, as can be deduced from an examination on the above facts, it is arguable whether, on this record, Buice committed *1182 any offense during his probationary period. All of the misdemeanor convictions for which we have dates occurred six to seven months after Buice's probation expired. However, for purposes of this dissent I have assumed that some or all of Buice's offenses occurred during the probationary period. As to the checks which are the subject of the Tate County indictment, the record indicates a deal was cut with Buice regarding those checks as shown by the following colloquy, occurring at the end of the State's case, between Buice and the trial court:
THE COURT: Mr. Buice, you may call any witnesses, make any statements in your own behalf, testify in your own behalf, whatever. The State has now rested its case against you.
THE DEFENDANT: Your Honor, the only thing that I know to say is that when these last check charges were brought up I had done some work for the DA's office for the Panola-Tate Task Force. I was told by them that these charges would not be brought forward on me, that I would be given a chance to pay these checks off in a payment, which I have been doing, but I have the papers at home where I have been paying on them. I had the receipts from where I have paid the ones that I was indicted for in '90. Those checks were paid. There were no checks written between '90 and '95. It was from then until '95 that the other checks were written.
THE COURT: Wait a minute. Hand me that Tate County indictment.
(DOCUMENT PASSED TO THE COURT.)
THE COURT: Now, are you telling me that the Panola-Tate Task Force told you to go out and write bad checks, and they'd pick them up or you wouldn't have to pay them off?
THE DEFENDANT: No, sir. They didn't tell me that.
THE COURT: What are you telling me?
THE DEFENDANT: They told me that they wanted me to do some work for them. In exchange, they would pay me to help.
THE COURT: They would what now?
THE DEFENDANT: They told me that if I would work for them, in exchange they would help me get these checks paid. In other words, they were paying me to work, and in other words, to help me get these checks paid, and the charges would not be brought up against me. Since I have done this work, they also promised me that I would be protected. I have been hurt twice since I worked for them.
THE COURT: Where are they today? Why don't you have them here where you can put them on the stand and let them testify?
THE DEFENDANT: I don't have any way of getting in touch with anybody. I've been in jail for three weeks.
THE COURT: Did you ask anybody to issue a subpoena for them?
THE DEFENDANT: Yes, sir, my mother, but she don't have the means to talk to an attorney for me, and I can't talk to one.
THE COURT: Do you know anything about all this, Mr. Kelly?
MR. KELLY: Your Honor, I can attest that Mr. Buice testified as a witness for the State of Mississippi in a prosecution in this courtroom last month. I attest to that. I was the prosecutor.
THE DEFENDANT: But the case he was going against at that time
THE COURT: Speak up a little louder.
THE DEFENDANT: The case that I wasthat he was prosecuting that I was a witness with, the person that he was prosecuting at that time I had not been toldin other words, at that time the only thing they were doing were dropping two traffic violations when this personwith this person that he was prosecuting last month.

*1183 THE COURT: Who was that person?
THE DEFENDANT: Tim Black.
THE COURT: Tim Black. Well, I'm trying to make some connection between all of that and this 14-count indictment of bad checks.
THE DEFENDANT: Yes, sir.
THE COURT: Most of them given around Senatobia.
THE DEFENDANT: Yes, sir.
THE COURT: You've been told by the Panola-Tate Task Force that somehow they're going to
THE DEFENDANT: That they would keep me out of jail if I would work for them. Sheriff Bryan also talked with the district attorney, Bobby Williams, one day on person to person, which I was there and he got him to callI don't know who he called, but they had a warrant for my arrest, and he told them to hold the warrant, do not pick me up.
THE COURT: All right. You give me a list of names of people that can come here and verify what you're telling me. And I'll see that subpoenas are issued, and I'll see that they're brought to this courtroom and tell what they know under oath. You tell me now who you had communications with, Mr. Buice, and don't give me a bunch of junk here this morning. I want facts. You give me the names of
THE DEFENDANT: Sheriff David Bryan.
THE COURT:any law enforcement officers you've had communications with in regards to helping you on criminal offenses.
THE DEFENDANT: Sheriff David Bryan; the district attorney, Mr. Bobby Williams.
THE COURT: Bobby Williams? Bobby was here this morning.
THE DEFENDANT: I didn't see him.
THE COURT: He came through. He wasn't here long.
THE DEFENDANT: Jason Chrestman.
THE COURT: Jason Chrestman?
¶ 46. After the above colloquy between the trial court and Buice, the court called Sheriff Bryan, and the following pertinent conversation occurred between the court and Sheriff Bryan:
Q. What was the agreement?
A. That heAt that time that he would be allowed to pay these checks off and would not be prosecuted on some of them if he'd pay them off. They gave him an opportunity to pay them off just like they do a lot of them was my understanding. Now, I don't know whether he had an agreement with the DA.
But he did agree to do some work for the Task Force, and I know he went to trial in one case. I don't know how many he made for the Task Force. Jason Chrestman would have to be the one to say whether he tried to continue to work or whatever. I couldn't answer that.
Q. And your conversation predates this Tate County activity? Just look down over the indictment there. I'm sure all those checks weren't written the same day.
A. Some of these go back to '94, Judge.
Q. I need a time frame if you can come up with one.
A. It would just be a guess on my part because Raymond has been in and out down there several times, but it probably would be in '94 because this is when he first got in trouble with all the checks. Maybe the ladySomebody from the DA's office may be able to clarify it.
¶ 47. Jason Chrestman was called as a witness and denied that the Panola County Task Force made a deal with Buice to not prosecute Buice on the bad checks in Tate County. However, he admitted that a deal was made with Buice for Buice to work for the Task Force. He said as a part of the deal, Buice was given an option of having *1184 law enforcement stand up for him in court or receiving cash money for his work. He testified that Buice chose the cash money option and that Buice did in fact turn some cases for the Task Force. He also testified that the Task Force paid Buice for the work performed by Buice. He further testified that February 7, 1995, was the last time Buice worked for the Task Force.
¶ 48. The District Attorney, Bobby Williams, was called as a witness, and he denied that he promised to keep Buice out of jail in exchange for Buice working with the Task Force. However, he admitted that Buice worked for the Task Force prior to January 1995, the date when the last check in Tate County was written. The pertinent portion of Williams's testimony is revealed in the following colloquy between him and the trial court:
BY THE COURT: Mr. Buice has testified that he has worked for the Panola-Tate Task Force, that he made cases for the Task Force, that he had conversations with David Bryan, Bobby Williams, and Jason Chrestman. Mr. Buice was assured by either you or David Bryan or Jason Chrestman that in consideration for him working for the Task Force that he would not receive any jail time on any of these bad checks charges outstanding.
I want you to tell the Court what you recall, if you had conversations, the substance of the conversations, put it in some kind of time frame for me.
A. Judge, I don't know if I can put it in a time frame. I had
Q. Mr. Kelly hadI believe here are the exhibits of the Tate County charges that was presented by Ann Lamar and returned March 11 of this year.
(DOCUMENT PASSED TO THE WITNESS.)
A. Your Honor, I'm satisfied that the conversation I had with him was way before January of '95. The only conversation I had with him, if memory serves me correct, happened at the Highway Patrol substation in Batesville. Sheriff Bryan and I were up there on another matter, and I can't recall what it was. And we ran into him, and at that time he had 20 or 30 bad checks that were eitherhe'd been charged on or charges were pending.
And I recall some conversation about him working with the Task Force, and the only thing I told him was that that was fine with me, but that all of those checks would have to be made good, or else we intended to pursue them. And I don't know exactly what the records in the check unit show, but I believe some of them were paid off and some of them never were.
But that's about the extent of it, Judge. And again, I can't remember the time frame, but I know it was before January '95.
¶ 49. Two things are clear from the above testimonies of the various State officials: the State cut a deal with Buice regarding working for the Task Force at a time when the State knew Buice had written some checks in Tate County in violation of the terms and conditions of his probation, and the State deliberately forewent bringing revocation proceedings against Buice, either because the State promised that it would not prosecute Buice, as testified by Buice, or because the State agreed to allow him to pay the checks as testified by the district attorney. In either event, it is clear that it was because of Buice's cooperation with the Task Force that no revocation action was brought against him during his probationary period. The dispute was over the terms of the deal, not whether a deal actually existed. The fact that the terms of the deal were in dispute in no way affect the crucial fact that the State knowingly and intentionally forewent bringing the revocation action for more than six months after Buice's probation had expired and more than fifteen months after the State knew Buice had violated the terms of his probation by writing checks in Tate County, *1185 with ten of the thirteen months being within Buice's probationary period. Now having set forth these facts, I turn to the ultimate issue before us: is Buice foreclosed from asserting that his incarceration is unlawful for lack of jurisdiction by the trial court to revoke his probation when he failed to appeal from the denial of his first post-conviction relief petition setting forth this issue of lack of jurisdiction?
¶ 50. I believe the resolution of the question presented turns on whether the trial court had jurisdiction to revoke Buice's probation. If the trial court were possessed of jurisdiction in this specific case as opposed to being simply possessed of jurisdiction of the subject matter generally, then the majority's conclusion would be more tenable though still incorrect. On the other hand, if the trial court though once possessed of jurisdiction in this case, had lost it either because Buice's probation had expired and/or because Buice did not receive any due process prior to the expiration of his probation, then the majority's conclusion is untenable and outright indefensible. I believe the latter is the case.
¶ 51. In Ellis v. State, 748 So.2d 130 (Miss.1999), one Patsy Jean Ellis pled guilty in the Circuit Court of Leflore County to embezzlement and was sentenced on June 28, 1990, to ten years incarceration with the time suspended. She was placed on supervised probation for five years and allowed to move to Arkansas with probation supervision being transferred to Arkansas through the interstate compact program. While in Arkansas, Ellis committed a felony and was incarcerated there for fourteen months from April 1995 through June 1996. At the time of Ellis's conviction, she had approximately six weeks remaining on her five year probation period under the jurisdiction of the Leflore County Court. Id. at (¶ 3). One month after Ellis's conviction in Arkansas, Mississippi Department of Corrections (MDOC) field officer James Garrett signed a form which he called a field warrant and forwarded it to the interstate compact office in Jackson for forwarding to the Arkansas authorities. He never received any acknowledgment from Jackson or Arkansas that the warrant had been received. Id. at (¶ 6). On June 14, 1996, Ellis was released from prison in Arkansas. Because the Arkansas incarceration tolled the running of the Mississippi probation term by fourteen months, a little less than two months still remained on Ellis's probation term in Mississippi. Id. at (¶ 8). On November 19, 1996, approximately three months after the expiration of Ellis's period of probation in Mississippi, she was arrested by Arkansas authorities and subsequently returned to Mississippi. The Leflore County Circuit Court revoked Ellis's Mississippi probation. Id. at (¶ 14). The Mississippi Supreme Court reversed, holding:
We agree with Ellis's assertion that when the Leflore County Circuit Court revoked her probation ... the court lacked jurisdiction. At the time of her arrest, on or about November 20, 1996, the five year term of her probation had already expired by several months and, therefore, could not be revoked.
The State argues that the May 4, 1995, form warrant signed and mailed by MDOC officer Garrett served to toll the running of Ellis's term of probation. However, because it was not "issued by the court or a judge in vacation", it was not an arrest warrant, but at most was an authorization to arrest, being a "written statement setting forth that the probationer has, in the judgment of the probation and parole officer, violated the conditions of probation as set forth in Miss.Code Ann. § 47-7-37." Had the "written statement" been received by an officer who then lawfully arrested the probationer prior to the running of the five year term, that would have been sufficient to toll the running of the five year period in accord with Jackson v. State, 483 So.2d 1353 (Miss.1986). In Jackson we held that a petition for revocation filed eleven days prior to the expiration *1186 of the probationary period tolled the running of the five year period. Also in Jackson, we found that since the lower court had acted on the petition within a reasonable time (13 days after it was issued), the revocation of probation was lawful even though it did not occur before the final day of the term of probation. Because our statutes do not specifically require the filing of a petition of revocation, we do not today adopt a rule that the filing of such petition is a specific requirement for tolling the running of the probationary period. (However, due process necessarily requires that the probationer receive proper notice, whether by an arrest warrant or by the filing of a petition of revocation, which must state at a minimum the nature of the violation and the date, time and place of hearing.)
* * * *
The State is unable to explain why it allowed five months to pass between Ellis's release and her subsequent detention. The State asserts that it did not know exactly where Ellis was after her release, yet it fails to explain why a warrant was never served on her while she was confined in an Arkansas penitentiary or why it did not contact Ellis's Arkansas parole officer until November, 1996.
The MDOC through its inaction and inattention allowed Ellis's five year probation period to expire in August 1996. Thus, the Leflore County Circuit Court lacked jurisdiction to detain her in November 1996 (emphasis added).

Ellis at (¶14-16).
¶ 52. Ellis is clear authority for the proposition that in order for a circuit court to have jurisdiction to revoke a probationer's probation after the expiration of the probationer's term of probation, the State, prior to the expiration of the term of probation, must have either arrested the probationer, filed a petition of revocation against the probationer or given the probationer due process constituting, at a minimum, the nature of the violation and the date, time and place of the hearing. While at first blush Ellis appears to be in conflict with Hester v. State, 741 So.2d 229 (Miss. 1999), a closer reading and analysis of Hester reveals no conflict. In Hester, grounds arose for revoking the parolee's parole during the parolee's period of probation. A warrant for the parolee's arrest was issued prior to the expiration of the parolee's period of parole, but he was not arrested until after his period of parole had expired. Also, a preliminary revocation hearing had been held, in the parolee's absence, during the probationary period. A parole revocation hearing was held a little over three months after the parolee's arrest. The Hester Court held that the issuance of the warrant tolled the running of the probationary period. Id. at (¶ 3-5).
¶ 53. An older case similar to Hester on the issue of a trial court's authority to revoke probation after expiration of the term of probation is Jackson v. State, 483 So.2d 1353 (Miss.1986). In Jackson, the petition to revoke was filed eleven days before the probationer's probation expired, but the revocation hearing was not held until thirteen days after the expiration of the term of probation. Id. at 1356. The Jackson court held that the filing of the petition tolled the running of the probation period. The Jackson court then concluded its treatment of the issue with the following dicta "[if] this [the authority of a trial court to hold a probation revocation hearing after the expiration of a probationer's term of probation] were not the law, then a probationer who violates his probation on the last day of the five (5) year period would have to be caught and given a hearing that day or his probation could not be revoked. Such reasoning would be absurd and is not the law." Jackson, 483 So.2d at 1356. The concurring opinion seizes upon this dicta as authority for the proposition that the issuance of a warrant or the filing of a petition to revoke prior to the expiration *1187 of a probationer's term of probation is not a prerequisite to the court's jurisdiction to revoke the probationer's probation after the expiration of the term of probation. My short answer to this argument is that in a proper case the argument may have merit. This is not that case. Buice did not violate his probation on the last day of the term of his probation. His errant ways were known to the State long before his term of probation expired, and the State has not explained why it allowed six months to pass after the expiration of Buice's term of probation before it filed its petition to revoke. Perhaps Buice supplied the answer when he said he had a deal with the State that the State would not prosecute him in exchange for his working for the Panola County Task Force. It is incontrovertible that Buice did in fact work for the Panola County Task Force, and I believe a deal is a deal. In any event, the State certainly cannot argue, and it does not, that it delayed bringing the petition because of the deal. After all, it is the State's position that under the terms of the deal, Buice still had to pay the checks. Further, Buice last worked for the Task Force in February 1995 which was eight months prior to the expiration of Buice's term of probation.
¶ 54. It is beyond debate in this case that the State met neither of the requirements of Ellis. Buice was arrested at or about the time the petition was filed which was approximately six months after the term of his probation had expired. The revocation hearing was held more than seven months after the expiration of Buice's term of probation. In Ellis, the probationer was arrested approximately three months after her probation had expired, and the revocation hearing was held four months after expiration of the term of probation with a revocation order being entered approximately one month after the hearing.
¶ 55. Having established that, under the Ellis holding, the trial judge did not have jurisdiction to revoke Buice's probation, I now turn to the remaining issue: whether Buice's failure to prosecute an appeal from a judgment or decision rendered by a trial court that did not have jurisdiction to render the judgment, precludes him from raising the lack of jurisdiction issue in a subsequent appeal. Both the majority and Judge Southwick, in his concurring opinion, conclude that he is precluded. The majority concludes Buice is procedurally barred pursuant to the doctrine of res judicata and also statutorily barred under Miss.Code Ann. § 99-39-27(9) (Rev.1994) as construed by Sneed v. State, 722 So.2d 1255 (Miss.1998). While the Sneed court held that the petitioner's successive postconviction relief petition was procedurally barred, it nevertheless considered the motion because of the petitioner's allegation that his sentence had expired. Id. at 1257. An allegation of expiration of sentence is one of the exceptions provided by Miss. Code Ann. § 99-39-23(6) to the procedural bar. In addressing the petitioner's claim in Sneed, the court taught:
This is obviously not a claim that the sentence has expired. It is a claim that the sentence is somehow incorrect or illegal. This claim is not excepted from the time bar by virtue of the statute. This Court has carved an exception to these procedural bars, however, where it found it necessary to protect fundamental rights. The right to be free from an illegal sentence had been found to be fundamental. United States v. Sine, 461 F.Supp. 565, 568 (D.S.C.1978). However, there is no merit to the claim that the sentence Sneed received is illegal and he is not entitled to a correction.
Id. at 1257. (emphasis added).
¶ 56. Judge Southwick, in his concurring opinion, acknowledges that allegations of denial of fundamental rights are excepted from the procedural bar. However, he goes on to characterize Buice's claim of denial of a fundamental right, if indeed it is, as a new category of fundamental rights: "a due process right not to be *1188 convicted by a court that does not have jurisdiction or not to be detained by a conviction that is void." The concurring opinion then advises, "[t]his Court can enter a decision based on its best judgment as to whether the state supreme court would recognize Buice's argument as raising a fundamental right. If possible, I would prefer avoiding the somewhat speculative nature of that exercise and initially determine instead whether the challenge that Buice makes demonstrates a jurisdiction problem with the revocation."
¶ 57. First, I fail to see how we would be engaging in a speculative exercise in holding that the right not to have to serve an illegal sentence is a fundamental right. In fact that is exactly what the Sneed Court said. Thus, we already have some guidance from our supreme court. Can it be rationally argued that the order sentencing Buice to serve the original nine year sentence is not an illegal order in light of the Ellis holding? The majority fails to address the illegality of the order revoking Buice's probation, and the concurring opinion concludes the order was legal because at most it was voidable but not void.
¶ 58. In an attempt to explain why he concludes the revocation order was voidable but not void on its face, Judge Southwick blurs the distinction between a court's general subject matter jurisdiction and a court's jurisdiction to act in a specific case. In the latter circumstance, a court may still possess general subject matter jurisdiction, which is conferred by statute or some other authority such as a constitution, but not have jurisdiction to act in the particular case because of the occurrence of some event which terminates the court's power to act in the specific case.
¶ 59. In Ellis, our supreme court made it clear that the eventswhich terminate a trial court's authority or jurisdiction to act in a specific case (such as the jurisdiction or authority to revoke a probationer's probation)are: (1) the failure of the State to arrest the probationer during the probationary period for violations of the terms and conditions of the probation, (2) the expiration of the probationer's term of probation if (a) no warrant has been issued for probation violation prior to the expiration, or (b) no petition to revokewhich gives minimal due process of notice of the nature of the violation, the date, time and place of hearinghas been filed prior to the expiration. Clearly, the trial judge in Ellis had general subject matter jurisdiction of revocation proceedings because such jurisdiction is conferred by statute, but the issue was not whether he had such general jurisdiction but whether he had lost such general jurisdiction to adjudicate in the specific case before him because of some intervening events.
¶ 60. The distinction between retention of general subject matter jurisdiction and retention or loss of jurisdiction to act in a particular case where general subject matter jurisdiction is retained has long been recognized in Mississippi jurisprudence. In National Casualty Co. v. Calhoun, 219 Miss. 9, 67 So.2d 908 (1953), the court addressed the issue of loss of a trial court's jurisdiction in a specific case. The issue was framed as follows:
The sole question for decision is whether or not the county court had jurisdiction to hear and sustain, at a term subsequent to that during which an original judgment was entered, a motion for a new trial and a contrary judgment, when no motion for that purpose had been filed prior to the adjournment of the court which awarded the original judgment.
A judge may, on his own motion, order a new trial as long as he has jurisdiction, "at any time during the term at which the verdict or judgment was rendered, but not thereafter." 66 C.J.S., New Trials, § 115, p. 330.
Besides, "It is essential that the court have jurisdiction in order to grant a new trial to the same extent as when the original judgment was entered, and, if jurisdiction of the parties or the subject matter has been lost after the entry of the original judgment, an order granting a new trial is void," 66 C.J.S., New Trials, § 118, p. 334.

*1189 * * * *
Manifestly the judge was without power, on his own motion, to continue to a succeeding term a cause in which a final judgment had already been entered.
Consequently, the action of the county court in setting aside the original judgment and entering judgment for the appellee was a nullity.
Id. at 909 (emphasis added).
¶ 61. While National Casualty Co. deals with the loss of a trial judge's jurisdiction over a particular case because of the culmination of a term of court, the intervening event, there is no reason why its teaching regarding a trial judge's loss of jurisdiction over the subject matter of a specific case would not be applicable in other situations involving other kinds of intervening events. Clearly one cannot reasonably argue that the trial court in National Casualty Co. did not have general jurisdiction to hear motions for new trials and grant relief as it deemed necessary and appropriate. Yet, the Mississippi Supreme Court held that the trial court lacked the jurisdiction to do just that in National Casualty Co. The only sensible conclusion to be drawn is that a trial court may have general subject matter jurisdiction but not jurisdiction to act in a particular case. See also Brown v. Thomas, 230 Miss. 308, 92 So.2d 878 (1957). Thus, it is clear to me that the Mississippi Supreme Court's holding in Ellis that the trial judge lacked jurisdiction to revoke the petitioner's probation compels two conclusions: the court was speaking of the lack of jurisdiction of the trial court to act in that particular case even though the trial judge in that case had general subject matter jurisdiction of the matter in question, and when a trial judge issues an order in a case in which he lacks jurisdiction, that order is not voidable but void. In such cases, the trial judge's action is a nullity. National Casualty Co. teaches as much. It seems nonsensical to me to hold that the failure to appeal from a null and void order precludes a subsequent attack on that order when it never existed legally although it may have existed physically. One other point should be made. Even if Buice were found to be procedurally barred from raising the issue of his illegal sentence because of his failure to perfect an appeal from the denial of his first post-conviction relief petition, it appears to me that since his claim involves the denial of a fundamental right and that a substantial right is affected, we should notice it under the plain error doctrine. The right of an appellate court to notice plain error is addressed in M.R.E. 103(d). Under the comment to the rule, the following guidance and explanation are given:
Subsection (d), regarding plain error, is a restatement of that doctrine as it existed in pre-rule practice. It reflects a policy to administer the law fairly and justly. A party is protected by the plain error rule when (1) he has failed to perfect his appeal and (2) when a substantial right is affected.... The plain error may be applied in either criminal cases or civil cases. (emphasis added)
¶ 62. For the reasons stated, I would reverse and render the decision of the trial court revoking Buice's sentence.
KING, P.J., JOINS THIS SEPARATE WRITTEN OPINION.