# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-01177-SCT

*MONTRELL JORDAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/16/2007 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BILL WALLER, SR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | JAMES H. POWELL, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/02/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     Montrell Jordan ("Jordan") was tried and convicted of depraved heart murder, and was sentenced to life imprisonment. Following his conviction, Jordan unsuccessfully sought a new trial. Aggrieved by the judgment rendered against him, Jordan raises fourteen claims on appeal. Finding all claims to be without merit, this Court affirms Jordan's conviction.

## FACTS

¶2.     On April 27, 2005, a dance was held at the Holmes Community College ("HCC") student union, commonly referred to as the Canteen. The record reflects that on the night of

the dance, a fight broke out between some members of the HCC football team and eight individuals who did not attend HCC. The fight began inside the Canteen and later moved outside. There was testimony that after the fight moved outside, two gunshots were fired. As a result, Dwaentre Davis, also known as DeeDee, was killed.

¶3. Shaghana Simpson, an HCC student, and Joey Netherland, the security guard at the dance, testified that the shooter left the scene in a tan Chevrolet Suburban (the "Suburban"). Simpson testified that the shooter was wearing a white t-shirt and blue jeans. She also reported to police officers that the Suburban belonged to Montrell, whose last name she could not remember at the time. Netherland testified that he had unsuccessfully attempted to stop the shooter from driving away by stepping in front of the Suburban. He supplied police officers with a partial license plate number for the Suburban. Arlena Shaw, an HCC student, testified that she saw the shooter leave the scene in a silver Kia Sephia, and that three or four other people were in the car with the shooter.

¶4. Following the shooting, Officers Kenneth Wilson and John Newton of the Holmes County Sheriff's Department arrived and spoke to individuals at the scene. The police did not find any bullet shell casings on the ground. After their initial investigation, Officers Wilson and Newton proceeded to Jordan's home in Pickens, Mississippi, where they were met by Officer Fred Coats. At Jordan's home, Officer Wilson, who was previously acquainted with Jordan, saw Jordan and his father, Walter Jordan, enter the home through the back entrance. The officers saw a tan Suburban parked behind a shed behind the home. The officers knocked on the back door, and Walter Jordan let them into the house.

2

¶5.    The officers told Walter Jordan that they needed to speak with his son. Officer Wilson then told Montrell Jordan that he was under arrest "for investigation of a shooting at Holmes Community College," and advised him of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Officers Wilson and Newton testified that they asked to search Jordan's vehicle and that Jordan consented. A brown leather holster and four .357 bullets were recovered from inside the vehicle. Officer Newton testified that he returned to Jordan's home at a later time to retrieve the clothing that Jordan was wearing at the dance. When he asked Walter Jordan for the clothing, Mr. Jordan gave Officer Newton a pair of blue jeans and a white t-shirt.

¶6.    Officer A.C. Hankins of the Mississippi Bureau of Investigation ("MBI") testified that he performed a gunshot residue test on Jordan's hands at 1:25 a.m. on April 28, 2005, approximately four hours after the shooting. The test from Jordan's hands and a test performed on the inside of the Suburban were both negative. In the early morning hours of April 28, 2005, Officer Hankins and Captain Sam Chambers of the Holmes County Sheriff's Department interviewed Jordan after he was read his *Miranda* rights. Officer Hankins reported that Jordan stated that he had attended the party at the HCC canteen on April 27, 2005, that a fight broke out, and that someone started shooting a gun. Jordan reported that after the shooting, he went to his Suburban and drove home. He stated that he had been wearing "a white tee shirt and some [Girbaud jeans]" at the dance. Jordan denied owning a handgun. Later in the morning of April 28, 2005, Jordan gave a similar statement to Detective Lacarus Oliver.

3

¶7.     On April 28, 2005, Simpson reported to the police that she had previously observed a gun under a seat in Jordan's vehicle, and that Jordan told her that it was a .357. Later on in the investigation, Netherland and Carlton Brown, an HCC student, identified Jordan as the shooter from a photographic lineup. Jordan was charged with murder, and was tried in the Holmes County Circuit Court from February 14, 2007 to February 16, 2007. The jury found him guilty of depraved heart murder. He now raises fourteen issues on appeal.

## ANALYSIS

**1.     Whether the Defendant's Constitutional Rights Were Violated by a Failure to Voir Dire the Jury Regarding Bias**

¶8.     Jordan argues that his constitutional rights to a fair trial were violated because the court, the prosecution, and defense counsel at trial failed to voir dire the jury regarding their prior knowledge of the case from community discussion and the media. Jordan asserts that the entire jury pool was biased because of the pretrial publicity surrounding the killing of Davis, who was a freshman football player at HCC, a school supported by tax dollars and located in a very small community.

¶9.     Jordan concedes that jurors were asked general questions regarding their prior knowledge of the case, but argues that the trial court and counsel "failed to follow up with proper questioning." He asserts that there was no questioning of the jury pool regarding bias, ill-will, or prejudicial feelings against Jordan, as a non-student accused of shooting an HCC student at a social event. Furthermore, Jordan argues that it was error for the trial court and defense counsel not to ask potential jurors about their affiliation with HCC.

¶10. In his appellate brief, Jordan cites *United States v. Parker*, 877 F.2d 327 (5th Cir. 1989) and Mississippi Code Annotated Section 13-5-79 (Rev. 2007), which describes when a potential juror may serve despite having an impression as to guilt or innocence. Jordan also cites Mississippi Code Annotated Section 99-15-35 (Rev. 2007), which sets out the grounds for change of venue. To the extent that Jordan is raising a claim regarding venue, defense counsel never moved for a change of venue, nor did the trial court rule on this issue. Therefore, this claim is procedurally barred. *Dedeaux Util. Co. v. City of Gulfport*, 938 So. 2d 838, 846 (Miss. 2006) (citation omitted).

¶11. When reviewing the conduct of voir dire, this Court applies an abuse of discretion standard. *Jackson v. State*, 791 So. 2d 830, 835 (Miss. 2001). Moreover, "abuse of discretion will only be found where a defendant shows clear prejudice resulting from undue lack of constraint on the prosecution or undue constraint on the defense." *Id.* at 835-36 (citation omitted). A jury selection procedure is proper if it "gives the defendant a fair opportunity to ask questions of individual jurors which may enable the defendant to determine his right to challenge that juror." *Stevens v. State*, 806 So. 2d 1031, 1062 (Miss. 2001) (citations omitted). Furthermore, "[i]t is well founded that the trial judge has the discretion to excuse potential jurors for cause if the court believes the juror could not try the case impartially." *Woodward v. State*, 533 So. 2d 418, 424 (Miss. 1988) (citing *Burt v. State*, 493 So. 2d 1325, 1327 (Miss. 1986)).

¶12. The record reflects that defense counsel was not restricted in examining the venire. Defense counsel did not move to quash the venire, and did not object to the jury that was impaneled. During the trial court's voir dire of the jury, Judge Lewis informed the venire

that they must ignore information relating to the case that they gained outside the courtroom. Defense counsel followed up by questioning potential jurors individually at the bench to determine what knowledge they had regarding the case in order to determine whether they could be fair and impartial.

¶13. The trial court did not abuse its discretion regarding jury selection. Judge Lewis questioned jurors about their ability to be fair and impartial before impaneling the jury, and there is no indication that defense counsel was restricted during jury selection. Therefore, we find this issue to be without merit.

**2. Whether the Defendant's Constitutional Rights Were Violated by the Verdict Reached by a Biased Jury**

¶14. This issue is essentially a restatement of the first and has been addressed above. To the extent it is not addressed above, the issue is procedurally barred. It is a longstanding principle of law that "[i]f an appellant fails to support her allegation of error with argument or authority, this Court need not consider the issue." *Pierre v. State*, 607 So. 2d 43, 48 (Miss. 1992) (citations omitted). In raising this issue on appeal, Jordan's appellate counsel cites no authority, nor does he direct the Court to any objection by defense counsel at trial or ruling of the trial court that would constitute reversible error. The issue is completely devoid of any specific allegation of error by Jordan. This Court presumes that the judgment of the trial court is correct and the appellant must "demonstrate some reversible error to this Court." *Edlin v. State*, 533 So. 2d 403, 410 (Miss. 1988), *cert. denied*, 489 U.S. 1086, 109 S. Ct. 1547, 103 L. Ed. 2d 851 (1989). Thus, we find this issue to be without merit.

**3. Whether the Defendant Was Denied a Fair Trial Because Four Jurors Were Openly Biased**

6

¶15. Jordan asserts that he was denied his right to a fair trial because four of the jurors that were impaneled were unable to fairly and impartially consider the evidence. The four complained of are Marcus Turner, Loretta McGee, Curtis Moore, and a "female dressed in red."

¶16. After the jury was impaneled and before the trial began, Turner informed the trial court that he did not feel as if he could focus on the trial. The trial court informed him that all the other potential jurors had been dismissed, so Turner should do his best to focus as long as he could. The trial judge said that she would check on him during the trial. Jordan asserts that during the course of the trial, Turner had a demeanor that reflected his inability to focus on the evidence presented. However, the record does not reflect that Turner had problems focusing on the trial once it began.

¶17. As for McGee, the trial court asked her several follow-up questions in chambers regarding McGee's family's connections to Jordan's family. McGee confirmed that one of her family members was acquainted with one of Jordan's family members, but that this would not affect her ability to be fair and impartial. Jordan claims that the examination of McGee put "pressure on this juror which in reality forced her to vote for a conviction. This confrontation in chambers placed her in a position of overacting [sic] in a negative way toward the Defendant." Jordan's appellate counsel offers no support from the record to demonstrate that McGee was pressured by the conversation in chambers.

¶18. Jordan further asserts that the jury panel was tainted by the foreperson of the jury, Moore, who is a retired law enforcement officer who had previously had a civil conflict with Jordan's father. This information was not known at the time of trial, as Walter Jordan only

7

discovered that Moore was on the jury after the trial had commenced and "was unable to communicate this background to counsel in a timely fashion." Therefore, this information was only disclosed in Jordan's post-trial motion for a new trial.

¶19. If a juror takes an oath that he or she can be fair and impartial in fulfilling the duties of a juror and the trial court is satisfied by that oath, then he or she may serve on the jury despite a preconceived opinion as to guilt or innocence of the accused. Miss. Code Ann. § 13-5-79 (Rev. 2002). In this case, voir dire was conducted in which the venire was asked whether or not they could be fair and impartial, and whether or not they could give Jordan the presumption of innocence. The venire was asked whether or not they or their relatives were friends of Jordan or his relatives. The venire was not specifically asked whether or not they had prior negative interactions with Jordan or his relatives, but they were given an opportunity to volunteer relevant information that had not been elicited by the trial court and the attorneys. The record reflects that Moore did not provide any information about a prior relationship or interaction with Jordan's father during the voir dire. Since the jury was impaneled after the voir dire, during which Moore took an oath to be a fair and impartial juror, this Court does not believe that reversal is required because Moore sat as a juror and as the foreperson in this case.

¶20. With regard to the "female dressed in red," Jordan asserts that she "continuously cried and made emotional gestures during the trial." The record reflects that she may have been crying at one point during the trial. Although defense counsel brought this to the attention of the trial judge, defense counsel did not request that this juror be replaced with an alternate,

nor did defense counsel move for a mistrial. Jordan argues that the court should have *sua sponte* granted a mistrial because the "female dressed in red" was emotionally upset.

¶21. This Court has held that it is within the trial court's discretion whether or not to grant a mistrial and this Court will not find error absent an abuse of discretion. ***Williams v. State***, 971 So. 2d 581, 590-91 (Miss. 2007) (finding that the trial court did not abuse its discretion in failing to *sua sponte* declare a mistrial when the prosecution purportedly made an inappropriate statement) (citations omitted); ***Brent v. State***, 632 So. 2d 936, 941-42 (Miss. 1994) (finding that the trial court properly denied a motion for mistrial where a juror discussed the case with other jurors during recesses) (citations omitted). In this case, defense counsel made no motion for mistrial because of this juror's conduct. Furthermore, the record does not show that the emotional state of the "female dressed in red" was so disruptive and prejudicial to the trial that the trial court abused its discretion by not *sua sponte* declaring a mistrial.

¶22. Moreover, Jordan's appellate counsel cites no authority in support of his contention that these four individuals should not have been permitted to sit as jurors. As reflected in the discussion of the previous issue, it is a longstanding principle of law that "[i]f an appellant fails to support [his] allegation of error with argument or authority, this Court need not consider the issue." ***Pierre v. State***, 607 So. 2d 43, 48 (Miss. 1992) (citations omitted).

**4.     Whether the Trial Court Committed Error by Denying the Defendant's Motion for Directed Verdict and by Allowing an In-Court Identification of the Defendant**

¶23. Jordan asserts that he was never identified as the shooter of the victim, and therefore could not have been convicted "of murder beyond a reasonable doubt or to a moral certainty

as required by law." Since Mississippi law does not require a finding of guilt to a moral certainty, this Court will determine whether or not Jordan was wrongly convicted of murder beyond a reasonable doubt. *See, e.g.*, **Miller v. State**, 980 So. 2d 927, 929 (Miss. 2008) (noting that the burden of proof for criminal cases is proof beyond a reasonable doubt).

### A. Identification of the Shooter and the Motion for Directed Verdict

¶24. Jordan asserts that he was never positively identified as the shooter, and further contends that no evidence linked him to the crime. In support of his argument, Jordan cites **Edwards v. State**, 736 So. 2d 475 (Miss. Ct. App. 1999), where the Court of Appeals found that the identification of the shooter was against the weight of the evidence and warranted a new trial. In this case, defense counsel moved for a directed verdict, arguing that the prosecution failed to prove that Jordan was the shooter. The trial court denied the motion. Jordan asserts that this constituted error and that the trial court should have at least reduced the charge to manslaughter, directed a verdict on the murder charge, and allowed the jury to determine guilt or innocence on the manslaughter charge.

¶25. This Court's standard of review for sufficiency of the evidence is as follows:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient.

**Boyd v. State**, 977 So. 2d 329, 336 (Miss. 2008) (internal citations omitted). In determining whether evidence is sufficient to support a jury verdict in a criminal case, this Court reviews

10

the evidence in the light most favorable to the State. *Id.* (citation omitted). This means that "[a]ll credible evidence consistent with the defendant's guilt must be accepted as true, and the state is given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Id.* (citation omitted). Moreover, since witness credibility and relative weight of testimony are left to the factfinder, "the Court should reverse only where, 'with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.'" *Id.* at 337 (citing *Fox v. State*, 724 So. 2d 968, 970 (Miss. Ct. App. 1998)).

¶26. Simpson and Netherland testified that they heard two gunshots and saw a flash from the second gunshot. Simpson testified that the shooter wore a white t-shirt and jeans, which matched the clothing Jordan's father gave the police. Simpson also testified that the shooter got into a car that she recognized as belonging to Jordan. She testified that she had previously observed a gun in Jordan's Suburban and knew that he kept a second gun in the Suburban. Netherland testified the shooter's vehicle was a "light brown Suburban." Netherland testified that he had stepped in front of the Suburban, in an attempt to prevent the shooter from fleeing the scene. However, he said that the Suburban drove around him, and that the shooter grinned at him as he fled the scene. Later, Netherland and Brown identified Jordan in a photographic lineup.

¶27. The record reveals that there was sufficient evidence to support the jury's verdict.

**B.     In-Court Identification**

¶28. Jordan asserts that the trial court erred in allowing six witnesses to make in-court identifications of Jordan. Jordan argues that these in-court identifications fail the totality of

11

the circumstances test as set forth in ***Neil v. Biggers***, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). The test requires that the following factors be considered:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

***Bogan v. State***, 754 So. 2d 1289, 1292 (Miss. Ct. App. 2000) (citing ***Neil v. Biggers***, 409 U.S. at 199-200). The record reveals that Jordan did not object to the in-court identification by any witness. Thus, this issue is not preserved for appeal. *See, e.g.*, ***Fleming v. State***, 604 So. 2d 280, 302 (Miss. 1992); ***Smith v. State***, 530 So. 2d 155, 161-62 (Miss. 1988).

**5.      Whether the Defendant's *Miranda* Rights Were Violated, Rendering the Defendant's Unsigned Statements Inadmissible**

¶29.    Jordan argues that his constitutional right to counsel was violated when he was interrogated despite having requested counsel and refused to sign a waiver-of-rights form. Jordan testified at the suppression hearing and reiterates on appeal that he requested an attorney when he was being questioned by Captain Chambers, but was told by the captain that his statement would not be used against him.

¶30.    In ***Miranda***, the United States Supreme Court held that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination requires that the accused be advised of his right to remain silent and his right to counsel before any custodial interrogation. ***Miranda v. Arizona***, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Once advised of his ***Miranda*** rights, an accused may waive these rights and respond to

interrogation. ***North Carolina v. Butler***, 441 U.S. 369, 374-75, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979).

¶31.    Waiver must be voluntary, knowing, and intelligent. ***Miranda***, 384 U.S. at 444.  The prosecution must prove beyond a reasonable doubt that a statement was given after a valid waiver. *See, e.g.,* ***Coverson v. State***, 617 So. 2d 642, 647 (Miss. 1993) (citations omitted). Waiver is considered voluntary if it is the result of a "free and deliberate choice rather than intimidation, coercion or deception." ***Id.***  Knowing and intelligent waiver must be "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." ***Id.*** (citations omitted).  However, this Court has held that "a defendant's refusal to sign a waiver does not constitute a *per se* invocation of his Fifth Amendment rights." ***Adams v. State***, No. 95-KA-01012-SCT, 1997 Miss. LEXIS 514, at *10 (Miss. Oct. 16, 1997) (citing ***Mohr v. State***, 584 So. 2d 426, 429 (Miss. 1991)).

¶32.    The trial court determines whether a statement was coerced or given after a voluntary, knowing, and intelligent waiver of rights. ***Baldwin v. State***, 757 So. 2d 227, 234 (Miss. 2000).  The judge may admit a statement if the totality of the circumstances indicates beyond a reasonable doubt that the statement was freely given. ***Id.*** (citing ***Smith v. State***, 737 So. 2d 377, 382 (Miss. Ct. App. 1999)).  The determination of the voluntariness of a waiver of rights is a mixed issue of law and fact. ***Holland v. State***, 587 So. 2d 848, 860 (Miss. 1991) (citations omitted).  Therefore, this Court will not reverse a trial court's findings if they were based on appropriate principles of law and supported by substantial evidence. ***Id.***

¶33.    In this case, Judge Lewis conducted a suppression hearing outside the presence of the jury and concluded that the prosecution had proved beyond a reasonable doubt that Jordan's

waiver was valid. *Frost v. State*, 483 So. 2d 1345, 1350 (Miss. 1986); *Manix v. State*, 895 So. 2d 167, 180 (Miss. 2005).

¶34.    In the early morning hours of April 28, 2005, Captain Chambers and Detective Hankins took a statement from Jordan. Captain Chambers testified that before the questioning began, he advised Jordan of his *Miranda* rights. He further testified that Jordan did not request an attorney, and that he was not threatened or coerced in any way. The testimony of Detective Hankins corroborated this. Later in the morning on April 28, 2005, Detective Oliver testified that he advised Jordan of his *Miranda* rights before questioning him. Furthermore, he testified that Jordan was not threatened or coerced in any way, and that Jordan stated he did not want to sign a waiver-of-rights form, but that he was willing to talk to officers. Detective Oliver testified that Jordan never requested an attorney, and never expressed a desire to stop the interview. MBI Officer Milton Williams, who was also present during Detective Oliver's interrogation of Jordan, testified that Jordan never requested an attorney.

¶35.    The trial court found both statements were given after a voluntary, knowing, and intelligent waiver. The trial court applied the proper legal standards and found that, after being advised of his *Miranda* rights, Jordan made voluntary statements to the officers that were in no way a product of threats, coercion, or promises. Accordingly, we find this issue to be without merit.

**6.      Whether the Trial Court Erred in Denying the Defendant's Motion to Suppress the Fruits of the Search of the Defendant's Car**

14

¶36. Prior to trial, Jordan filed a Motion to Suppress evidence found inside his car on the night of the shooting. The trial court initially found that Jordan had not consented to the search of his car and that there were no exigent circumstances justifying a warrantless search, and thus suppressed the evidence. However, after the trial court's ruling, the prosecution filed a Motion to Reconsider. The trial court then found that the evidence was admissible because the prosecution had demonstrated that there was probable cause supporting a warrantless search of Jordan's car.

¶37. The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures. U.S. Const. amend. XIV; *see also* Miss. Const. art. III, § 23. As a general rule, warrantless searches of private property are *per se* unreasonable. *See, e.g.*, *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). However, there are exceptions, such as the automobile exception. *See, e.g.*, *Robbins v. California*, 453 U.S. 420, 101 S. Ct. 2841, 69 L. Ed. 2d 744 (1981); *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981).

¶38. In this case, the trial judge found that there was probable cause for the warrantless search of Jordan's car, making the search valid. When determining whether or not a search is supported by probable cause, a judge must consider the totality of the circumstances and use his or her best judgment. *McNeal v. State*, 617 So. 2d 999, 1006-1007 (Miss. 1993) (citations omitted). This Court reviews the record to determine whether or not the trial court's finding is supported by substantial evidence. *Id.* at 1007.

¶39. In the instant case, there was testimony from several witnesses that the shooter left the scene in Jordan's car, which police officers found parked at Jordan's home shortly after the

incident. This constitutes substantial evidence in support of a finding that probable cause existed for a valid, warrantless search of Jordan's automobile. Accordingly, we find this issue to be without merit.

**7. Whether the Trial Court Erred in Denying the Defendant's Motion for a New Trial**

¶40. Jordan asserts that the trial court erred in denying his Motion for a New Trial, claiming that the jury verdict was contrary to the overwhelming weight of the evidence. Jordan argues again that there was no credible proof of guilt presented by the prosecution, and no positive identification of Jordan as the shooter. He appeals to this Court to reverse his conviction or, in the alternative, order a new trial for Jordan to be tried for manslaughter and not murder.

¶41. In reviewing whether a jury verdict is against the overwhelming weight of the evidence, "[t]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Smith v. State*, 868 So. 2d 1048, 1050 (Miss. Ct. App. 2004) (citing *Dudley v. State*, 719 So. 2d 180, 182 (Miss. 1998)). In doing so, "the State is given 'the benefit of all favorable inferences that may reasonably be drawn from the evidence.'" *Id.* (citing *Griffin v. State*, 607 So. 2d 1197, 1201 (Miss. 1992)). This Court will disturb a jury's verdict "[o]nly in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* (citing *Dudley*, 719 So. 2d at 182).

16

¶42. Simpson testified that she was present at the scene of the crime and observed the shooter wearing a white t-shirt and blue jeans. She testified that the shooter left the scene in a tan Suburban that she recognized as belonging to Jordan. Netherland testified that after the shooting, he attempted to prevent the Suburban from leaving. He gave a partial license plate number to the police that matched that of Jordan's tan Suburban. Also, Netherland and Brown positively identified Jordan as the shooter in a photographic lineup. Six witnesses identified Jordan as the shooter in court.

¶43. Jordan's assertion that there was no positive identification of Jordan as the shooter is patently without merit. We find that the verdict in this case is not contrary to the overwhelming weight of the evidence.

¶44. Jordan's argument that this Court should order a new trial on the charge of manslaughter is also without merit. A jury normally determines whether a defendant charged with murder is guilty of murder or manslaughter after hearing all of the evidence. ***Hodge v. State***, 823 So. 2d 1162, 1166 (Miss. 2002) ("Whether homicide is classified as a murder or manslaughter is ordinarily an inquiry to be made by the jury.") (citations omitted). In this case, the jury had the opportunity to hear the testimony and observe the demeanor of all the witnesses. The jury was instructed to consider the crime of manslaughter if it found that the prosecution failed to prove beyond a reasonable doubt that Jordan committed depraved heart murder as defined in Mississippi Code Section 97-3-19(1)(b).[1] Miss. Code Ann. § 97-3-

---

[1] Mississippi Code Annotated Section 97-3-19, entitled, "Homicide; murder defined; capital murder; lesser included offense," provides in relevant part:

(1) The killing of a human being without the authority of law by any means

17

19(1)(b) (Rev. 2006). The jury found Jordan guilty of depraved heart murder and not manslaughter. This Court will not disturb the jury verdict.

**8.       Whether the Indictment Was Fatally Defective**

¶45.   Jordan asserts that the indictment erroneously charged him with depraved heart murder instead of manslaughter. This Court has held that "[i]t is a fundamental principle of our criminal justice system that a prosecutor is afforded prosecutorial discretion over what charge to bring in any criminal trial." *Watts v. State*, 717 So. 2d 314, 320 (Miss. 1998). Therefore, we find this assertion to be completely devoid of merit.

¶46.   Jordan further asserts that the indictment was fatally flawed because it did not include all the statutory language in the depraved murder statute. Miss. Code Ann. § 97-3-19(1)(b) (Rev. 2006). The indictment did not include the following language from the statute: "although without any premeditated design to effect death of any particular individual." A defendant may challenge the sufficiency of an indictment for the first time on appeal. *Spicer v. State*, 921 So. 2d 292, 319 (Miss. 2006) (citing *State v. Berryhill*, 703 So. 2d 250, 253 (Miss. 1997)).

---

> or in any manner shall be murder in the following cases:
> . . .
> (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual;
> . . .
> (3) An indictment for murder or capital murder shall serve as notice to the defendant that the indictment may include any and all lesser included offenses thereof, including, but not limited to, manslaughter.

Miss. Code Ann. § 97-3-19 (Rev. 2006).

¶47. An indictment is meant to "furnish the defendants notice and a reasonable description of the charges against them so that they may prepare their defense." *Spicer*, 921 So. 2d at 319 (citation omitted). It follows that "an indictment is only required to have a clear and concise statement of the elements of the crime the defendant is charged with." *Id.* This Court has held that, "as a general rule, an indictment which tracks the language of a criminal statute is sufficient to inform the defendant of the charge against him." *Stevens v. State*, 808 So. 2d 908, 919 (Miss. 2002).

¶48. A review of the indictment in this case shows that it generally tracked the language of the statute and referenced Section 97-3-19(1)(b) of the Mississippi Code such that Jordan was on notice of the charge against him. Therefore, we find this argument to be without merit.

## 9. Whether the Prosecutor's Comments During Opening Statement and Closing Argument Constituted Misconduct Warranting Reversal

¶49. Jordan asserts that comments made by the prosecution during opening statement and closing arguments require a reversal of his conviction. Although Jordan mentions several questionable statements made by the prosecution during opening statement and closing argument, defense counsel only objected once. This objection was made in regard to a comment not challenged by Jordan on appeal. Therefore, this issue is procedurally barred. *Rubenstein v. State*, 941 So. 2d 735, 779 (Miss. 2006) (citations omitted).

## 10. Whether the Trial Court Committed Reversible Error in its Evidentiary Rulings

¶50. Jordan raises a multitude of evidentiary errors with respect to the testimony of witnesses and the trial court's admission of evidence.

### A. Prior Statements of Witnesses

¶51. Jordan asserts that the prosecution "used prior statements of witnesses on direct examination throughout each witness' testimony in order to bolster their testimony." However, appellate counsel for Jordan fails to cite to the record to support this argument, fails to identify specific examples from the record, and fails to cite any authority. Therefore, "[t]his issue is not properly before the Court pursuant to M.R.A.P[.] 28(a)(6) which states that an argument in the appellate's brief 'shall contain the contentions of appellant with respect to the issue presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied upon.'" *Conley v. State*, 790 So. 2d 773, 784 (Miss. 2001); *see also Hoops v. State*, 681 So. 2d 521, 535 (Miss. 1996); *Pate v. State*, 419 So. 2d 1324, 1325-26 (Miss. 1982).

### B. Photographs of the Victim

¶52. The prosecution initially sought to introduce three photographs of the deceased: (1) a photograph of the victim's face for identification purposes, (2) a photograph depicting the exact size of the bullet, and (3) a photograph depicting the relationship of the bullet entry wound to the victim's chin and face. The trial court admitted photographs (1) and (3) into evidence, but excluded photograph (2). Prior to trial, Jordan sought to have all photographs depicting the victim excluded because their probative value was outweighed by their prejudicial effect. On appeal, Jordan asserts that it was error for the trial judge to admit photographs (1) and (3) at trial.

¶53. This Court has held that "admissibility of photographs rests within the trial court's sound discretion and their admissibility will be upheld absent a showing of abuse of

20

discretion." ***Sharp v. State***, 446 So. 2d 1008, 1009 (Miss. 1984) (citing ***Ashley v. State***, 423 So. 2d 1311, 1316 (Miss. 1982)). This Court has also stated that "photographs of the victim should not ordinarily be admitted into evidence where the killing is not contradicted or denied and the *corpus delicti* and the identity of the deceased have been established." ***Id.*** (citing ***Shearer v. State***, 423 So. 2d 824, 827 (Miss. 1982); *see also* ***Williams v. State***, 354 So. 2d 266 (Miss. 1978)). But as long as a photograph has an evidentiary purpose, it may be admitted despite its potential to affect the emotions of jurors. ***Spann v. State***, 771 So. 2d 883, 895 (Miss. 2000) (citations omitted).

¶54. This Court has stated that photographs have an evidentiary purpose "when they: (1) 'aid in describing the circumstances of the killing; (2) describe the location of the body and cause of death; (3) supplement or clarify witness testimony.'" ***Id.*** (quoting ***Westbrook v. State***, 658 So. 2d 847, 849 (Miss. 1995) (citations omitted)). Here, the two photographs in question were admitted during the testimony of Dr. Steven Hayne, the pathology expert, and had both evidentiary and probative value because they were used to identify the victim, as well as to support Dr. Hayne's testimony regarding the cause of death. For the foregoing reasons, we find this issue to be without merit.

### C. Testimony of Shaghana Simpson and Photographs of the Suburban

¶55. Jordan also asserts that it was error for Simpson to "discuss inadmissible hearsay evidence regarding a weapon alleged to have been in the possession of the Defendant at some unspecified date in the past." Jordan also argues that the prosecution used these prior unsworn statements to bolster Simpson's testimony. Because Jordan's trial counsel failed

21

to timely object to this testimony, the issue is procedurally barred. **Smith v. State**, 729 So. 2d 1191, 1205-06 (Miss. 1998).

¶56.    Jordan also argues that it was error for the trial court to admit photographs depicting a tan Suburban into evidence during Simpson's testimony. He asserts that there was "no authentication or self-authentication of the photographs,"and that "there was no qualification by the witness that she had specific knowledge from the photograph that it was the same tan suburban [sic] as that owned and/or driven by the defendant." Again, trial counsel failed to timely object to the admission of the photographs and this issue is procedurally barred. *See Smith*, 729 So. 2d at 1205-06.

### D.    Testimony of Kenny Wilson

¶57.    Jordan's first assignment of error regarding Officer Wilson's testimony is that it was error that he was permitted to testify to statements made by Simpson that constituted hearsay. Because trial counsel did not object to the testimony in question, this assignment of error is procedurally barred. **Ballenger v. State**, 667 So. 2d 1242, 1251 (Miss. 1995).

¶58.    Next, Jordan argues that Officer Wilson should not have been allowed to testify to what was found in Jordan's vehicle on the night of the crime. Again, this assignment of error is procedurally barred because Jordan's trial counsel did not make a contemporaneous objection. *Id.*

¶59.    Finally, Jordan argues that it was error for the trial court to allow Officer Wilson to testify regarding the bullets that were recovered from Jordan's vehicle. He asserts that Officer Wilson was not qualified as an expert in ballistics, and should therefore not have been "allowed to testify that a .38 caliber cartridge could be shot in a .357 caliber weapon."

22

The record shows that Officer Wilson did not testify to the fact that a .38 caliber bullet can be shot out of a .357 gun. Jordan's trial counsel objected to the line of questioning before Officer Wilson made any statement regarding shooting a .38 caliber bullet out of a .357 gun. This objection was sustained by the trial court, and Jordan has no basis for complaint on appeal. *Walls v. State*, 928 So. 2d 922, 927 (Miss. Ct. App. 2006).

### E. Testimony of John Newton

¶60. Jordan asserts that the testimony of John Newton was "rife with inadmissible hearsay statements and discussions about evidence which he had no direct knowledge." Jordan's appellate counsel fails to cite any authority in support of this argument. Therefore, this assignment of error is not properly before this Court. *See Conley v. State*, 790 So. 2d 773, 784 (Miss. 2001). Furthermore, trial counsel failed to timely object to the testimony in question, and this issue is procedurally barred. *Smith v. State*, 729 So. 2d 1191, 1205-06 (Miss. 1998).

### F. Testimony of William Meredith

¶61. Jordan asserts that the testimony of William Meredith, a pawnshop owner, concerning Jordan's purchase of a gun was "inadmissible, irrelevant and hearsay." At trial, Meredith was questioned about documents related to Jordan's purchase of a gun. Jordan's trial counsel objected to Meredith's testimony, arguing that Meredith could not authenticate the documents. The objection was overruled.

¶62. As to Jordan's argument that the documents were hearsay, trial counsel did not object on those grounds, so the claim is procedurally barred. *Smith*, 729 So. 2d at 1205-06. As to Jordan's challenge of the authenticity of the documents, Meredith offered testimony that was

23

"sufficient to support a finding that the matter in question is what its proponent claims," which is required by Mississippi Rule of Evidence 901. Miss. R. Evid. 901. The record reflects that Meredith was familiar with the document, and as the federal firearms holder, he was responsible for maintaining that particular document, as well as others like it. Accordingly, we find this issue to be without merit.

### G. Testimony of David Whitehead

¶63. Jordan asserts that it was error for the trial court to allow the testimony of David Whitehead, an expert in forensic science, regarding gunshot residue and the ways in which gunshot residue can be removed. Jordan asserts that the testimony was inadmissible under Mississippi Rule of Evidence 702 in that it did not aid the trier of fact in understanding the evidence. Miss. R. Evid. 702. Jordan asserts, "[t]his 'no evidence of residue' witness was staged to imply that the Defendant was guilty because he did not have gunshot residue on his person, clothing or vehicle." Jordan's appellate attorney goes on to argue that "'[t]he evidence' in this case is 'no evidence.'" We find this assertion of error to be procedurally barred because the testimony of Mr. Whitehead was taken absent objection at trial. *Walls v. State*, 928 So. 2d 922, 927 (Miss. Ct. App. 2006).

### H. Testimony of A.C. Hankins

¶64. Jordan's first assignment of error regarding A.C. Hankins is that he should not have been allowed to testify to the statement given by Jordan on April 28, 2005. Jordan alleges that "no proper qualification of the statement was ever made." Jordan asserts that it was improper hearsay testimony for Hankins to read from the interview transcript of Jordan's statement. This assignment of error is without merit. A statement made by a defendant is

24

a party-opponent admission, which qualifies as nonhearsay. Miss. R. Evid. 801(d)(2)(A). Mississippi Rule of Evidence 801(d)(2)(A) states in relevant part: "A statement is not hearsay if . . . [t]he statement is offered against a party and is his own statement." Miss. R. Evid. 801(d)(2)(A).

¶65. Jordan also asserts that it was error for Hankins to be allowed to testify regarding the gunshot residue tests that he performed. Jordan's appellate attorney asserts that this testimony was hearsay. No contemporaneous objection was made when this testimony was given, so this claim is procedurally barred. *Smith v. State*, 729 So. 2d 1191, 1205-06 (Miss. 1998).

¶66. Finally, Jordan argues that "it was error for the trial court to allow Hankins to give his opinion as to why Ms. Simpson gave the type of statement that she did." He also asserts that "it was error for the trial court to allow Hankins to testify as to the truthfulness of the Defendant and of his statement." The testimony to which Jordan refers was elicited on cross-examination. It is a well-settled rule "that a defendant cannot complain of the evidence which he himself brings out." *Simpson v. State*, 366 So. 2d 1085, 1086 (Miss. 1979) (citing *Stone v. State*, 210 Miss. 218, 49 So. 2d 263 (1950)). Therefore, this assertion of error is lacking in merit.

**I.      Photographic Lineup, Testimony of Lacarus Oliver, and ATF Documents**

¶67. Jordan asserts that the photographic lineup was highly prejudicial and requires reversal. In making his argument, Jordan asserts that "the Defendant was the only person wearing civilian clothing, including a white t-shirt, and not wearing an orange jumpsuit or a black and white jumpsuit, and was the only one where you could see that he had on a plain

white t-shirt." Of the six individuals pictured in the photographic lineup, one is clearly wearing a black and white jumpsuit and one is wearing an orange jumpsuit. The other four individuals pictured appear to be wearing civilian clothing. Therefore, we find this argument without merit.

¶68. Jordan further asserts that "it was rank hearsay testimony by Oliver as to who identified Montrell Jordan, namely, Joey Netherland and Carlton Brown, when both of these witnesses were available to testify." A statement concerning an identification of someone after perceiving them is not hearsay if the declarant is subject to cross-examination. ***Culp v. State***, 933 So. 2d 264, 276 (Miss. 2005); *see also* Miss. R. Evid. 801(d)(1)(C). In this case, Jordan's trial counsel objected that it was hearsay for Oliver to testify that he showed the photographic lineup to both Netherland and Brown, and that both identified Jordan as the shooter. The trial court properly overruled this objection. Both Netherland and Brown testified at trial and were subject to cross-examination regarding this identification procedure. Accordingly, we find this issue without merit.

¶69. Next, Jordan argues that it was inadmissible testimony for Oliver to give "his opinion that the Defendant was 'guilty' based on his investigation." Jordan's appellate counsel cites to three different pages in the record to support this contention. However, the record reveals that no such testimony was ever given by Oliver. Therefore, we find this issue to be without merit.

¶70.     Lastly, Jordan argues that the trial court erred in admitting the ATF[2] Gun Trace and Trace Return documents into evidence.  Jordan asserts that the documents were not properly authenticated under Mississippi Rule of Evidence 901.  Miss. R. Evid. 901.  Defense counsel did not object to the authentication procedure with regard to the ATF Gun Trace, which was admitted into evidence absent objection; therefore, Jordan is procedurally barred from raising this issue on appeal.  **Rubenstein v. State**, 941 So. 2d 735, 755 (Miss. 2006).  Defense counsel did, however, make a contemporaneous objection to the admission of the Trace Return, objecting on authentication grounds.

¶71.     It is well-established that "this Court reviews admission of evidence for an abuse of discretion."  **Sewell v. State**, 721 So. 2d 129, 138 (Miss. 1998) (citations omitted).  Furthermore, "[e]videntiary rulings are affirmed unless they affect a substantial right of the complaining party."  **Sewell**, 721 So. 2d at 138 (citations omitted).  Mississippi Rule of Evidence 901 requires that a document be authenticated before it is admitted, which is satisfied when there is evidence sufficient to support a finding that the document is what the proponent claims it is.  Miss. R. Evid. 901.

¶72.     In the instant case, Oliver's testimony revealed that he was familiar with the document, and that it was the document he received from the ATF in response to his "ATF gun trace" request for Montrell Jordan.  This testimony, paired with the information on the face of the document, was evidence sufficient to support a finding that the document was

---

[2] The Bureau of Alcohol, Tobacco, Firearms and Explosives is commonly referred to as the ATF.

what the prosecution claimed. Accordingly, we find that the trial judge did not abuse her discretion by admitting the Trace Return into evidence.

### J. Testimony of Terry Wade

¶73. Jordan asserts that the prosecution "used a written statement by this witness to impeach him without laying the proper foundation to do so, or without getting the witness to contradict his statement." Defense counsel did not make a contemporaneous objection to the prosecution's use of Wade's prior statements; therefore, this issue is procedurally barred. *Jones v. State*, 606 So. 2d 1051, 1058 (Miss. 1992) (citation omitted).

### K. Testimony of Joey Netherland

¶74. Jordan's appellate attorney again fails to point the Court to a reversible error regarding the testimony of Joey Netherland, cites no case law to support any clear assertion, and attacks the credibility of this witness without ever directing the Court to an evidentiary error. Whatever issue Jordan's appellate attorney is attempting to raise "is not properly before the Court pursuant to M.R.A.P[.] 28(a)(6) which states that an argument in the appellate's brief 'shall contain the contentions of appellant with respect to the issue presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied upon.'" *Conley v. State*, 790 So. 2d 773, 784 (Miss. 2001); *see also Hoops v. State*, 681 So. 2d 521, 535 (Miss. 1996); *Pate v. State*, 419 So. 2d 1324, 1325-26 (Miss. 1982).

### 11. Whether the Trial Court Erred in Giving Jury Instructions 3, 4, and 5

¶75. Jordan asserts that the trial court erred in granting jury instructions 3, 4, and 5. Defense counsel never raised any objection to the jury instructions. Therefore, this issue is

procedurally barred. *Rubenstein v. State*, 941 So. 2d 735, 779 (Miss. 2006) (citations omitted).

**12.   Whether Jordan's Trial Counsel Was Constitutionally Ineffective**

¶76.   Jordan asserts that he was denied his constitutional right to assistance of counsel at trial. To prevail on an ineffective assistance of counsel claim, a defendant must show that his trial counsel was deficient, and that because of his trial counsel's deficiency, he suffered actual prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 102 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The defendant carries the burden of proving both prongs. *McQuarter v. State*, 574 So. 2d 685, 687 (Miss. 1990).

¶77.   In asserting this issue, Jordan's appellate counsel states that Jordan was denied effective assistance of counsel because trial counsel made nineteen errors, including failing to preserve any issues for appeal that this Court finds unpreserved on appeal. Jordan's appellate attorney dedicates merely five pages of his seventy-four page brief to addressing this issue. He cites no authority except to set out the standard as articulated in *Strickland*. *Strickland*, 466 U.S. 668. Finally, he summarily offers, "[t]herefore, the Defendant has met his burden of proof on both prongs of the *Strickland* test." Jordan's appellate counsel offers no citations to the record, no citations to authority to support his contentions, and no analysis to this Court. Accordingly, Jordan has failed to meet the two-prong test set forth in *Strickland*. We find this issue to be without merit.

**13.   Whether the Prosecution Withheld Witness Statements Unfavorable to the Prosecution**

¶78. Jordan asserts that the prosecution failed to provide Jordan with all statements made by Simpson and Randy Scott in violation of Uniform Circuit and County Court Rule 9.04, which requires that witness statements be disclosed to the defendant. Miss. Unif. Cir. & Cty. R. 9.04. He further asserts, "[t]his implies or alleges that there are contradictions or conflicts in the statements that could be helpful to the Defendant." In making such an argument, Jordan's appellate counsel fails to identify any place in the record illustrating an attempt by defense counsel to raise this issue with the trial court and does not cite any authority in support of this argument. Therefore, this claim is not properly before this Court because "[i]f an appellant fails to support her allegation of error with argument or authority, this Court need not consider the issue." *Pierre v. State*, 607 So. 2d 43, 48 (Miss. 1992) (citations omitted).

**14.    Whether the Cumulative Errors of the Trial Court Mandate Reversal**

¶79. Jordan's final assertion is that the cumulative errors of the trial court mandate reversal of the judgment rendered against him. Finding all claims of error to be without merit, we find no cumulative error which would require reversal of Jordan's conviction.

<u>CONCLUSION</u>

¶80. Finding all assignments of error asserted by Jordan to be without merit, this Court affirms Jordan's conviction.

**¶81.    CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., DIAZ, P.J., EASLEY, CARLSON, DICKINSON, RANDOLPH, AND LAMAR, JJ., CONCUR. WALLER, P.J., NOT PARTICIPATING.**

30